STATE EX REL. ROBERT MITCHELL FURNITURE CO.,
PLAINTIFF, v. TOOLE, GOVERNOR, ET AL., DEFENDANTS.

(No. 1,715.)

(Submitted October 19, 1901. Decided October 28, 1901.)

*Mandamus—Suit Against State—Mandamus to Officer—State
Furnishing Board—Rescinding Contracts — Advertisement
for Bids—Union Labor—Constitution.*

1. Where the state furnishing board regularly accepts a bid for the furnish-
ing of supplies to the state, and subsequently refuses to sign the formal
contract, a writ of mandate to compel such action is not obnoxious to
the objection that it is, in effect, a suit against the state.

2. Under Political Code, Sec. 707, providing that the state furnishing board
must award the contract for supplies for the state to the lowest responsi-
ble bidder, where the board regularly accepts a bid for supplies its action
in subsequently attempting to rescind the contract because the bidder is
shown to be a corporation employing non-union workmen, and hostile to
labor organizations, is void.

3. That the refusal of the state furnishing board to award a contract to the
lowest responsible bidder is merely erroneous, is not sufficient to justify
the issuance of the writ of mandate.

4. A contract entered into by the acceptance of a bid for public work, ten-
dered pursuant to an advertisement limiting the right to bid to persons
employing, or who will in the future employ, union labor only, is void.

5. An absolutely void contract cannot be made valid by the failure of public
officers to object to it upon the proper ground.

6. Where advertising for bids is a statutory requirement, neither the munici-
pality nor its agents can make a contract binding upon it without compli-
ance with the formalities so prescribed.

7. Advertisements for proposals to furnish supplies are not public printing
within the language or spirit of Section 30, Art. V, of the Constitution.

8. Political Code, Sec. 705, declares that, before any contract for the furnish-
ing of supplies to the state is let, the state furnishing board must adver-
tise for proposals for 20 days in two daily newspapers printed in the
state. Constitution, Art. V, Sec. 30, ordains that all printing for the
state shall be performed under contract to be given to the lowest responsi-
ble bidder. *Held,* that where an advertisement for proposals for the fur-
nishing of supplies was not made in compliance with section 705, but was
made only in a newspaper which had the contract for the public printing,
and a contention that the publication was lawful because the advertise-
ment was public printing was without merit.

*Mandamus* by the state, on the relation of the Robert Mitchell
Furniture Company, to Joseph K. Toole, governor, and others,
constituting the state furnishing board, to compel respondents
to sign a formal contract for the furnishing of supplies to the

state by relator.   There was a demurrer to the petition and a motion to quash the writ, which were overruled, and answers and a reply were then filed.   Alternative writ quashed, and proceedings dismissed.

STATEMENT OF THE CASE BY MR. JUSTICE PIGOTT.

This is an application by the plaintiff, the Robert Mitchell Furniture Company, for a writ of mandate commanding the defendants to sign a certain alleged contract.   An alternative writ was issued. A demurrer to the petition and a motion to quash the writ were overruled and denied *pro forma*.   Answers and a reply were then filed.   Upon the issues thus framed evidence was taken.   So far as need be stated the facts are these: The defendants Toole, Donovan, and Hays are and since January 7, 1901, have been, respectively, governor, attorney general, and secretary of state of the state of Montana, and as such have constituted, and do now constitute, the state board of examiners and *ex officio* furnishing board.   One of the duties of the furnishing board is to provide furniture and supplies for the state capitol, and to that end to contract with the lowest responsible bidder therefor.   On the 20th day of May, 1901, the board directed that an advertisement be inserted in the Helena Independent, a daily newspaper printed at the seat of government of the state, and in two newspapers printed and published without the state, for sealed proposals to furnish certain supplies and furniture for the state capitol.   The advertisement ran for twenty days in the Helena Independent and in the other newspapers designated by the board, but it was not inserted in any newspaper printed in the state of Montana except the Independent.   Before the publication of the advertisement the board had awarded to the owner of the Helena Independent a contract to do the printing for the state, which contract was in existence while the advertisement appeared in that newspaper.   On the 1st day of August, 1901, the board opened and compared the proposals received, there being six bidders. Among the proposals was one from the plaintiff offering to

furnish the supplies called for in the advertisement at a stated price. On August 2d, 3d, and 5th the board further discussed and considered the several proposals, and on the 6th day of August, by unanimous vote, awarded the contract to the plaintiff for the sum of $35,781 upon the amended proposal, schedule and specifications submitted by the plaintiff and notified the company of the acceptance of its offer. The attorney general was directed by the board to prepare a formal contract conformable to the agreement resulting from the acceptance of the bid. This he did, and it was signed by the plaintiff but not by the board or its members. The bid of the plaintiff was not accompanied by any bond. At some time between the 10th and 23d of August the plaintiff delivered to the attorney general its bond bearing date August 10th, in the penal sum of $18,000, payable to the state furnishing board of the state of Montana. This bond was never presented to the board. A few days prior to the 23d of August the members of the board received from certain organizations, commonly called "labor unions," protests against the signing of the contract theretofore made with the plaintiff, the protests asserting hostility on the part of the plaintiff toward labor organizations and that it employed persons who were not members of unions. A meeting was called for August 23d for the sole purpose of investigating and taking action upon these protests. At the meeting one McDonald, president of the union known as the "Western Labor Union," presented the protests and evidence in support of the so-called "charges," and a representative of the plaintiff appeared in its behalf. Upon consideration of the "charges" and the purported evidence in support of them, the board formally reconsidered its action in awarding the contract to the plaintiff, the governor voting in the negative. It was then moved that the contract be canceled, which motion was carried against the negative vote of the governor. The following is a copy of the minutes of that meeting:

"HELENA, MONT., Aug. 23, 1901.

"The following protests to the signing of the contract with

the Robert Mitchell Furniture Company having been received: Silver Bow Trades & Labor Assembly, No. 61, Butte, Mont.; Missoula Federal Labor Union No. 43, Missoula Mont.; Western Labor Union, Butte, Mont.; Western Montana Trades & Labor Council, Missoula, Mont.; Barbers' Union, Butte, Mont.; Mountan View Lodge, No. 29, International Association of Machinists, Anaconda, Mont.; United Brotherhood of Carpenters & Joiners of America, Missoula, Mont.; Big Blackfoot Lumbermen's Union, No. 47, Bonner, Mont.; Montana State Trades & Labor Council, Butte, Mont.; Carpenters' Union No. 88, Anaconda, Mont.; Red Lodge Labor Union No. 70, Red Lodge, Mont.,—the board met to hear the matter of such protests, which were presented by Mr. Daniel McDonald, president of the Western Labor Union, on behalf of the several labor organizations, and by Mr. Lou Hartson, on behalf of the Robert Mitchell Furniture Company. The minutes of the previous meetings were approved. In the matter of the protest against awarding the contract to the Robert Mitchell Furniture Company for the furnishing of the state capitol; whereas, evidence was submitted to the board that the said Robert Mitchell Furniture company was denominated by the labor unions of the United States as hostile to labor organizations, and was classed as a scab company; and, whereas, said facts were presented to the state furnishing board. Now, therefore, after considering the charges and evidence in support thereof, it is hereby resolved: that the action of the board in awarding the contract to the Robert Mitchell Furniture Company be reconsidered: And that motion carried, Messrs. Donovan and Hays voting aye. A motion being made by a member of the board to cancel said contract, and the same being submitted to the board, was carried, Messrs. Donovan and Hays voting aye, and the contract was declared to be canceled. On both the above motions Gov. J. K. Toole voted in the negative. Mr. Lou Hartson, the representative of the Robert Mitchell Furniture Company, was notified in person by the secretary of the board of the decision of the board, rescinding the former order to award the contract to his firm. Board adjourned."

At this meeting the governor inquired where the bond was and the attorney general answered that he had it in his office, whereupon the governor inquired whether there was any objection on account of the bond, and whether there were any objections other than the one presented to the board by the labor unions, and was informed that there were none. As to which member of the board informed the governor that there was no objection to the contract save the one in respect of union labor is not clear, for the governor, after testifying that he made inquiries at that meeting of the board whether there was any other reason and was told that there was not, testified: "I will not say positively that you (the attorney general) said that there were no other reasons or objections to that bid; but you made no objection on account of the bond; * * * there was no other reason assigned, or suggested, passed upon, or determined by the board." The secretary of state testified that the only reason why he voted to rescind the contract was because of the matter set out in the resolution. No reason was assigned, suggested, discussed, passed upon or considered by the board other than the one set forth in the resolution. At the time of the rescission or cancellation of the contract the attorney general knew that the advertisement had not been printed in any newspaper in Montana except the Helena Independent, and had actual knowledge of the provision of Section 705 of the Political Code which makes it the duty of the board to advertise for twenty days in two daily newspapers printed in the state. On the 28th day of August, 1901, this proceeding was instituted, the plaintiff asking that the defendants be required to sign and deliver the formal contract prepared by the attorney general or one in substance similar thereto. Thereafter and on the 18th day of October, a bond in the penal sum of $75,000, duly executed by the plaintiff and a surety company, conditioned for the faithful performance of the contract, was delivered to the secretary of state, but no action thereon was taken by the board.

*Messrs. Toole & Bach,* for Relator.

*Mr. James Donovan, Attorney General*, for Defendants.

MR. JUSTICE PIGOTT, after stating the case, delivered the opinion of the court.

Many questions have been argued which we need not decide, —for instance, we find it unnecessary to determine whether the furnishing of a bond in conformity with the provisions of Section 708 of the Political Code is always a prerequisite to a valid contract with the board, or to determine the kindred question whether the board might waive or excuse the failure of the plaintiff to present a bond with its bid, and, if it could, whether it did so; and also the question whether the plaintiff followed the requirement of the latter sentence of Section 706 of the Political Code providing that "a sample and minute description of every article must accompany and be deposited with each proposal." For the purposes of the proceeding we assume, but do not decide, that these questions and all others not specially discussed should be solved in plaintiff's favor. So viewing the case, we deem it necessary or advisable to consider but four questions:

1.   The defendants Donovan and Hays attack the petition and alternative writ of mandate upon the ground that the proceeding is in effect an action against the state and say that a state of the Union is not without its express consent subject to suit in its own courts or in those of another state. They say that the doctrine is absolute 'and cannot be overthrown indirectly by the institution of actions against state officers when in effect they are actions against the state. With this we agree. (*Langford* v. *King,* 1 Mont. 33; *Fisk* v. *Cuthbert,* 2 Mont. 593; *State ex rel. Journal Pub Co.* v. *Kenney,* 9 Mont. 389, 24 Pac. 96; 23 Am. & Eng. Enc. Law (1st Ed.), 83.) But the present proceeding is not in effect an action or proceeding against the state. If the allegations of the petition are true the proposal of the plaintiff was regularly accepted and the contract let to it as the lowest responsible bidder after a compliance with all the statutory requirements. The state by its authorized agent

awarded a contract, and the object of the present proceeding is to compel the defendants as public officers of the state to sign the formal contract, and thereby perform what is alleged to be their ministerial duty. If the duty to be performed by a public officer of the state is purely ministerial, the writ of mandate may be issued, the case being otherwise a proper one for the employment of such writ. (*State ex rel. State Pub. Co.* v. *Smith,* 23 Mont. 44, 57 Pac. 449, and cases there cited; *Marbury* v. *Madison,* 1 Cranch, 137, 2 L. Ed. 60; *In re Ayers,* 123 U. S. 506, 8 Sup. Ct. 183, 31 L. Ed. 230.) In the case last cited the court approved the following extract from the opinion in *Board of Liquidation et al.* v. *McComb,* 92 United States, 541 (23 L. Ed. 628): "A state, without its consent, cannot be sued by an individual; and a court cannot substitute its own discretion for that of executive officers in matters belonging to the proper jurisdiction of the latter. But it has been well settled that when a plain official duty, requiring no exercise of discretion, is to be performed, and performance is refused, any person who will sustain personal injury by such refusal may have a *mandamus* to compel its performance; and, when such duty is threatened to be violated by some positive official act, any person who will sustain personal injury thereby, for which adequate compensation cannot be had at law, may have an injunction to prevent it;" and upon that principle this court has often entertained proceedings against state officers, the latest being *State ex rel. State Savings Bank* v. *Barret, State Treasurer,* 25 Montana, 112, 63 Pacific Reporter, 1031. If the defendants owe to the plaintiff the performance of an act which the law specially enjoins as a duty resulting from an office,— in other words, if the defendants as members of the board owe to the plaintiff a duty, and the performance of that duty is a ministerial act not involving the exercise of discretion or judgment,—the writ of mandate will lie to compel such performance, and the state is not thereby subjected to an action or proceeding. The petition is not obnoxious to the objection urged.

2.   Section 707 of the Political Code provides with refer-

ence to the state furnishing board: "The proposals received must be directed to the board, opened and compared by it at its office at twelve o'clock noon, of the day specified in the advertisement, and the board must award the contract for furnishing such supplies, or any of them, to the lowest responsible bidder at such time." Section 709 provides, among other things, that any and all bids may be rejected and the board may advertise again. The board is a governmental agency possessing such powers and jurisdiction, and such only, as the law confers upon it. In the examination, comparison, and consideration of the proposals and in awarding the contract the board exercises its discretion. The duty imposed is to award the contract to the lowest responsible bidder, unless the bids be rejected. This the statute commands it to do; and whenever, after a compliance with the statutory prerequisites essential to the valid acceptance of a bid, it has regularly awarded the contract, there spring into existence vested rights which the board cannot destroy or impair. It cannot insert into the formal written contract any condition not consonant with the contract already made by virtue of the acceptance of the bid. (*American Lighting Co.* v. *McCuen,* 92 Md. 703, 48 Atl. 352.) In the absence of fraud, accident, and mistake, or other legal reason sufficient to render the acceptance void or voidable, the contract resulting therefrom cannot (unless by mutual consent) be changed or annulled, nor may its obligation be impaired, by any act of the board. True, such a contract is subject to the approval of the governor and state treasurer (Constitution, Art. V, Sec. 30; Section 710, Political Code; *State ex rel. State Pub. Co.* v. *Hogan,* 22 Mont. 384, 56 Pac. 818; *State ex rel. State Pub. Co.* v. *Smith,* 23 Mont. 44, 57 Pac. 449), but this is a matter which does not concern the members of the board nor give it the right to recall the acceptance and award. When it has thus regularly discharged the duty imposed upon it by the law, its jurisdiction in respect of awarding the contract is exhausted; its discretion was exercised and the power further to exercise it is gone. We are

aware that there is some conflict of opinion upon this subject, but we think that such must in the nature of things be the rule applicable to boards and officers clothed with specially delegated authority and intrusted with limited jurisdiction. Support for these general observations may be found in *People ex rel. Holler* v. *Board of Contract and Apportionment of City of Albany,* 2 Howard's Practice Reports (N. S.) 423; *People ex rel. Lunney,* v. *Campbell,* 72 New York Reports 496; *State ex rel. Whedon* v. *York County,* 13 Nebraska 57 (12 N. W. 817); *Wren* v. *Fargo,* 2 Oregon 20; *People ex rel. Coughlin* v. *Gleason,* 121 New York, 631 (25 N. E. 4); *Boren* v. *Commissioners,* 21 Ohio State Reports, 311; *State ex rel. Coogan* v. *Barbour,* 53 Connecticut, 76 (22 Atl. 686, 55 Am. Rep. 65.)

The action of the board in attempting to cancel the contract was void unless a cause existed which the law recognizes as sufficient to invalidate the contract. We proceed to ascertain whether such cause appears.

3. In behalf of the attorney general and the secretary, of state the argument is advanced that the reason stated in the resolution was sufficient to justify the board in reconsidering the motion by which the bid of the plaintiff was adopted and in canceling the contract thereby created. It is asserted and seriously argued that, conceding the regularity of all the proceedings precedent to the letting of the contract and the validity of the letting, the board possessed the right to cancel the contract upon the ground that the plaintiff "was denominated by the labor unions of the United States as hostile to labor organizations and was classed as a scab company." The advertisement was silent upon the subject of union labor and non-union companies or persons; it did not pretend to limit the bidding to those who were friendly or indifferent to labor organizations, —if it had done so it would, as we shall see, have been invalid; on the contrary the notice was addressed to all persons—the invitation to present proposals was general. The proposal of the plaintiff was filed; the board declared it to be the lowest responsible bidder and awarded the contract to it. The plaintiff

was not guilty of fraud or deceit; the board was not misled; it was not induced to let the contract by any misrepresentation whatever; the bid of the plaintiff was not accepted through any accident or mistake. By what sort of logic do the attorney general and secretary of state attempt to defend their position? Let their answer speak upon this point. After reciting that the plaintiff was hostile to labor organizations and was classed as a non-union company, it avers that this "fact, in the judgment of defendants as said state furnishing board, rendered said company liable to be enjoined from carrying out said contract, and on the further grounds that said company was more liable to be unavoidably delayed by strikes and labor troubles than if said contract were let and awarded to a company or person not hostile to labor organizations; that, knowing the attitude of labor organizations towards the relator herein, it was probable and likely that the furnishing and delivery of the furniture and supplies under said contract by said relator would result in great damage and injury to the state, which could not be adequately provided against under the contract. The fact that said company was hostile to labor organizations, and having been so classed by them as a non-union company, was a reason, in the judgment of the defendants as such state furnishing board, which would affect their responsibility as bidders and render them less responsible and trustworthy than if they were not hostile to labor organizations or classed as a nonunion company. That said fact that said relator was hostile to labor organizations and classed as a nonunion company was not known to the defendants at the time they let and awarded said contract to the relator herein." Is it not wasting words to declare the evident and palpable fact that this is not a reason which the law recognizes as a sufficient cause for avoiding the contract? We are not to be understood as denying the legal right of the board in good faith but erroneously to award a contract to one who is not in fact the lowest responsible bidder, for we apprehend the rule in this state to be that the action of the board will be controlled or interfered with only where it clearly appears

that the refusal to award the contract to the lowest responsible bidder was fraudulent or in bad faith, or was the result of an abuse of discretion (which is equivalent to a failure to exercise discretion) ; that the refusal was merely erroneous is not sufficient to justify the issuance of the writ of mandate. Such seems to be the principle underlying the decision in *State ex rel. Eaves et al.* v. *Rickards,* 16 Montana, 145 (40 Pac. 210, 28 L. R. A. 298, 50 Am. St. Rep. 476). It may be that the refusal to award a contract to the lowest bidder who is in all respects responsible, for the sole reason that he is inimical to organized labor and is classed as a nonunion employer, would be arbitrary, oppressive and unjust conduct, indicating that the board failed to exercise discretion. But however this may be, the rule stated is inapplicable to the case at bar. The action of the defendants must be tested by a more rigid rule, for the board did not refuse to let the contract; it awarded the contract to the plaintiff, and seventeen days thereafter ordered its cancellation for the alleged reason stated in the resolution of August 23. If a contract was made by the acceptance of the bid, the board was powerless to rescind its action and thereby cancel the contract, except for a cause which in the eye of the law, rendered it void or voidable. In this respect it was like a contract between individual persons in which each enters into covenants with the other,—it could not be annulled at the pleasure or caprice of one party alone. Can it be sanely suggested by even the most prejudiced man that a private person possesses the legal right to hold for naught a contract to which he is a party because the other party is a person who is inimical to organized labor and is classed as a nonunion employer, the contract being silent on that subject? Of course the law would not recognize such reason as cause for the annulment of the contract; and equally as a matter of course is the rule the same in the case of contracts between boards and the individual person or corporation. In so far as its legal value and force is concerned the reason assigned might as well have been that the plaintiff employed members of labor unions, was therefore inimical to

nonunion workingmen, and was classed as a union company; or that the directors of the plaintiff believed in the dogma of the infallibility of the Pope and were therefore unfriendly to Protestants, or in the doctrine of transubstantiation and in auricular confession, or were high churchmen and therefore classed as ritualists; or that they were in sympathy with England's policy towards Ireland and therefore distasteful to the Fenians; or were members of a law and order league and hence inimical to anarchists and their sympathizers. In passing we observe by way of illustration that a contract between private persons may provide that it shall cease to be obligatory or be void if either party to it shall employ nonunion men, and the law will permit the provision to have its full force; and so with an inhibition against the hiring of union men and with all other stipulations which are not impossible of performance, not immoral, nor contrary to public policy. A private person seeking proposals may give notice that the bidders must be members of labor organizations or employers of none but union workmen; the acceptance of a bid made in accordance with the terms of the notice would constitute a contract the conditions whereof will be binding. But the advertisement for proposals and the contract created by the acceptance of a proposal made pursuant thereto to do work or furnish supplies for the state stand upon a different footing. The object of advertising for proposals is to invite and secure the benefit of competitive bidding. Section 705 of the Political Code prescribes that before any contract is let the board must advertise in two daily newspapers printed in the state, one of which must be printed at the capital, for sealed proposals to furnish the supplies desired. This court, in *State ex rel. Lambert* v. *Coad,* 23 Montana, 131 (57 Pac. 1092), quoted with approval the following language from the opinion of *Dement* v. *Rokker,* 126 Illinois, 174 (19 N. E. 33): "Letting by contract to the 'lowest responsible bidder' necessarily implies equal opportunity to and freedom in all whose interests or inclinations might thus impel them to compete at the bidding. No one may be compelled to bid at such a letting,

but there must be entire fairness and freedom in competition. * * * The manifest purpose in requiring the contract to be let to 'the lowest responsible bidder' is to protect the state against imposition and extortion." A contract entered into by the acceptance of a bid for public work tendered pursuant to an advertisement limiting the right to bid to persons employing or who will in the future employ union labor only, is necessarily void; the advertisement is illegal, for it tends to defeat the very purpose it was intended by the legislature to subserve. In *Adams* v. *Brenan,* 177 Illinois, 194 (52 N. E. 314, 42 L. R. A. 718, 69 Am. St. Rep. 222), the board of education advertised for bids for the construction of a roof for an addition to one of the free school buildings, the advertisement containing the following notice: "None but union labor shall be employed on any part of the work where such work is classified under any existing union." The bid of one Knisely was accepted, and a contract made containing a provision that none but union labor should be employed by him. A taxpayer filed a bill asking that the contract be declared void and that the board be enjoined from carrying it out or expending money under it. One of the reasons given in the application to the board for the adoption of the clause respecting the employment of union labor was that it would do away with strikes upon school buildings and thereby save the board much annoyance and delay. The syllabi accurately state the conclusions of the court as follows: "(3) Board of education cannot bind itself to give only union men employment. A board of education has no power to agree with the representatives of labor organizations to insert in all its contracts for work upon school buildings a provision that none but union men should be employed in such work, or placed upon its pay rolls. (4) A board of education has no discretion to make contracts restricting competition. That a board of education might have been of the opinion its action was for the public benefit affords no justification for limiting competition among bidders upon school building contracts, by requiring them to employ only union men in the work. (5) Stipula-

tion in public contract for employment of union men only is illegal. A provision in a contract for a public school building, which requires the employment of union men only, creates a monopoly in their favor, and restricts competition by preventing contractors from employing any but union men, excluding all others engaged in the same kind of work." The like principle is the basis of the decision in *State ex rel. Snyder* v. *Portland Natural Gas & Oil Co.,* 153 Indiana, 483 (53 N. E. 1089, 74 Am. St. Rep. 314).

Although the reason given, at the time of the attempted cancellation is not recognized by the law as valid, yet if there is cause sufficient to render the contract void it may be shown. The defendants are not estopped to urge other defenses. An absolutely void contract cannot be made valid by the failure of public officers to object to it upon the proper ground. There is no need of precedents to sustain this statement. *State ex rel. Leech* v. *Board of Canvassers of Choteau Co.,* 13 Montana, 23, (31 Pac. 879), is not exactly in point. The case of *Newell* v. *Meyendorff,* 9 Montana, 254 (23 Pac. 333, 8 L. R. A. 440, 18 Am. St. Rep. 738), is not pertinent.

4. Was the advertisement inviting proposals published according to law? It was inserted in the Helena Independent, a daily newspaper published at the seat of government, where it ran for twenty days prior to the time when the bids were opened and compared; but it was not printed in any other newspaper within the state. Section 705 of the Political Code reads as follows: "Before any contract is let, the board must advertise for twenty days in two daily newspapers printed in the state, one of which must be published at the seat of government, for sealed proposals to furnish any and all the supplies mentioned in the next preceding section." The advertisement appeared in but one paper printed in the state, and hence the section was not complied with. Where advertising for bids is a statutory requirement, the law is that neither the municipality nor its agents can make a contract binding upon it without compliance with the formalities so prescribed. "Bids need not

be called for unless the statute requires it; but if notice, advertising and similar preliminaries are required, a contract entered into without attention to these preliminaries will be held invalid. * * * The same rule applies to the letting of contracts on behalf of the state and, before a contract can become valid and binding upon the state, the statutory formalities must be complied with." (*State ex rel. Lambert* v. *Coad*, 23 Montana, 131, 57 Pac. 1092, and cases there cited.) The only argument advanced by the plaintiff against this objection to the contract is that Section 705 conflicts with Section 30 of Article V of the state Constitution, which ordains that "all stationery, printing, paper, fuel and lights used in the legislative and other departments of government, shall be furnished, and the printing, and binding and distribution of the laws, journals and department reports and other printing and binding, and the repairing and furnishing the halls and rooms used for the meeting of the legislative assembly and its committees shall be performed under contract, to be given to the lowest responsible bidder below such maximum price and under such regulations as may be prescribed by law." Counsel for the plaintiff argue that the legislative assembly had no power to require the publication of the advertisement to be made in any newspaper other than the Helena Independent, the proprietor of which had the contract for the public printing, and that the publication of the advertisement in that newspaper constituted a compliance with the law. The position of counsel is untenable. It is apparent to us that advertisements for proposals are not public printing, within the language or spirit of Section 30,—a contract for advertising for proposals to furnish supplies is not required to be let as a printing contract to the lowest responsible bidder; in other words, within the purview and intent of Section 30, an advertisement inviting bids is not printing, the contract for which must be let to the lowest responsible bidder; a contract for doing the printing mentioned in Section 30 does not include advertisements for bids. In the absence of a constitutional inhibition the legislative assembly has the right to

prescribe the manner of giving notice for proposals to furnish supplies. It has done so by Section 705, which requires that the state furnishing board must advertise for such proposals in two daily newspapers printed in the state, one of which must be printed at the capital. This section is in no wise repugnant to the constitution.

For the reason that the advertisement for proposals was not published in accordance with the requirements of Section 705 of the Political Code, the alternative writ is quashed and the proceeding is dismissed, at the costs of the plaintiff. Let judgment be entered accordingly.

*Writ quashed and proceeding dismissed.*

