### DILLINGHAM v. CITY COUNCIL OF SPARTANBURG.

1. ADVERTISING FOR BIDS FOR WORKING STREETS OR HIGHWAYS.—The provisions of Code, 1381, that county supervisor *may* advertise in county newspaper for bids for working highways by contract should not be construed *shall* or *must*, but was intended to give such officer discretion, and city council of Spartanburg, under general charter giving it same powers over streets as county officers over highways, is not required to advertise for bids for paving streets in county newspaper. But if the statute so requires, a contract is not void unless the statute requires advertisement as a condition for the exercise of the power to contract.

State v. Toole, 26 Mont., 22, and Inge v. Board of Public Works, 135 Ala., 187, distinguished from this case.

2. CONTRACTING FOR PAVING STREETS WITHOUT ADVERTISEMENT.—A TAX-PAYER cannot insist that city officers have not made a valid contract for paving streets because they refused all bids made after advertisement, and thereafter, upon conference with two lowest bidders, received bids from them lower than previously filed, and contracted with the lowest of these two to do the work, where the act resulted in larger saving to the taxpayers.

3. CITY OFFICERS MAY REQUIRE OF CONTRACTOR FOR PAVING STREETS BOND FOR INDEMNITY AND FUTURE REPAIRS.—Requirement of city officers of the contractor for street pavement to give a bond to guarantee the faithful performance of work, to indemnify city against suit, loss or damage by reason of negligence or default, want of skill or care on part of contractor, and requiring him to guarantee and keep in repair for one year, and retaining ten per cent. of amount of contract for one year, does not cut off full and free competition in bidding, but is a suitable and reasonable guarantee for the faithful performance of the work, and advantageous to taxpayers in safeguarding expenditures of city funds, where the work is to be paid for by proceeds of bonds already issued and sold.

Portland v. Bituminous Paving Co., 33 Or., 307, and Alameda Macadamizing Co. v. Pringle, 130 Cal., 226, distinguished from this case.

4. PAVING STREETS WITH PATENT MATERIAL.—City officers may advertise for bids and contract for paving streets with a patent material, where all the competition is allowed which the situation permits of.

Petition for injunction by William D. Dillingham against Mayor and City Council of city of Spartanburg and Southern Bitulithic Co.

Messrs. John Gary Evans and C. P. Sanders, for petitioner.

Messrs. Stanyarne Wilson and S. J. Simpson, contra.

January 4, 1907. The opinion of the Court was delivered by

MR. JUSTICE JONES. By this proceeding in the original jurisdiction of the Supreme Court, the plaintiff, as a citizen and taxpayer of the city of Spartanburg, sought to en-

join the performance of a contract entered into between the city council of Spartanburg and the Southern Bitulithic Company for the paving of certain streets of that city with bitulithic pavement. At a special session of this Court held July ...., 1906, judgment was rendered denying the application for permanent injunction and dissolving the temporary injunction previously granted. The reasons for that judgment remain to be given.

Pursuant to the provision of section 2021, vol. 1, Civil Code, the city of Spartanburg issued coupon bonds to the amount of one hundred thousand dollars for improving and paving the streets, which bonds were negotiated and the money arising therefrom was turned into the city treasury as a fund for such street improvement. The city council advertised for sealed proposals for the paving of certain streets with vitrified brick, bitulithic or bitumous macadam, or asphalt block, the material to be used to be selected by the city council after the opening of the bids, reserving the right to reject any and all bids.

The advertisement was made in *Engineering News of New York, Engineering Record of New York* and *Manufacturers' Record of Baltimore,* as the best means of reaching contractors and engineers, able and competent to do the class of work desired. No formal advertisement was made in any newspaper published in Spartanburg County, as it was regarded wholly unnecessary; but the newspapers of the city of Spartanburg made frequent references to the fact that the paving was to be done under contract and the contract was to be let by bids. In accordance with said advertisements and the specifications made by the city council, sealed bids were received and considered on March 26, 1906, as follows:

1. By Warren Brothers, for bitulithic pavement at $2.00 per square yard.

2. By Southern Bitulithic Company, for bitulithic pavement at $1.97 a square yard.

3. By G. O. Tenny, for vitrified brick, tar filler, $2.18 per square yard; for vitrified brick, cement filler, $2.14 per square yard.

4. By Southern Paving and ,Construction Company, for vitrified brick, 6" base, tar filler, $2.21 per square yard; for virtrified brick, cement filler, $2.11 per square yard.

5. By Barber Asphalt Company, bitumous macadam, $1.99 per square yard; should brick be used for car track, $2.09 per square yard.

The two lowest bidders were Southern Paving and Construction Company for brick pavement, and the defendant company for bitulithic pavement. Representatives of these companies were sent for and heard relative to a reduction of the price bid; whereupon the defendant company offered to reduce the price ten cents per yard on bitulithic pavement, and the Southern Paving and Construction Company offered to reduce the price of extras to the figures offered by defendant company, and any reduction that might be received in freight rates. The city council at first decided to reject all bids; but upon reconsideration the contract committee was instructed to take up the matter with the two lowest bidders and see if better bids could not be secured. At an adjourned meeting held the next day, the Southern Paving and Construction Company offered to place brick pavement for $2.06 per square yard, and the defendant company offered to place bitulithic for $1.75 per square yard. The contract was awarded the defendant company. .

1. The first ground upon which plaintiff assails the validity of the contract is the failure of the city council to advertise for bids in some newspaper published in Spartanburg County. No statute has been cited or found which requires advertisement for competitive bidding as a condition precedent to the making of a valid contract by the city of Spartanburg for street improvement. The charter of the city of Spartanburg having expired in 1901, that city was chartered under the general laws of the State providing for the incorporation of cities of more than

five thousand inhabitants, approved February 19, 1901, 23 Stat., 648. Sec. 15, of this act, now appearing as part of sec. 1985, Civil Code, provides:

"The said city or town council shall have power, and it shall be their duty, to keep in repair all the streets, ways and bridges within the limits of said city, and for such purpose they are invested with all the powers, rights and privileges within the limits of said city that are now given, or that may hereafter be given, to the county board of commissioners of the several counties of this State as to the public roads."

It is contended that the power of the city of Spartanburg with respect to repairing and improving its streets by contract is, as to the matter of advertising in a county newspaper, governed by the provisions of section 1381, Civil Code, in reference to the working of public roads under the contract system. That section provides: "If the county board of commissioners conclude to adopt the contract system for working, maintaining and operating the several sections of highways, roads, bridges and ferries in the several townships in their respective counties, or any part thereof, the county supervisor, as soon as practicable, thereafter, *may* (italics ours) advertise in the newspaper published in the county, once a week for three weeks, and by notices posted in two or more conspicuous places in the several townships, or the township to be worked by the contract system, for bids from responsible persons for the performance of the work as above set forth, and shall furnish specifications of all such work or contracts as have been advertised. Any and all bids made shall be in writing, sealed, and addressed to the county supervisor, and by him opened in the presence of and submitted to the county board of commissioners, and it shall be the duty of said board to accept the lowest bid made by a responsible person or party: *Provided,* The county board of commissioners shall have power to reject any and all bids; and said board is hereby empowered to hire overseers and laborers, and have the work per-

formed as in its judgment may be most expedient and for the best interest of the county * * * etc."

It is argued that "may," above italicized, should be construed as "shall" or "must," that the duty of advertising in a county newspaper is not merely directory but is mandatory, and that a failure to so advertise renders the contract void. It is true, that "may" in a statute is frequently construed "must" or "shall," especially where the public is interested in the thing to be done, and where such construction is necessary to give effect to the clear intention of the Legislature. *Minor* v. *Mechanic's Bank*, 1 Pet., 46. The original county government act of 1893, 21 Stat., 481, in section 11, contained the word "shall" instead of "may;" but by the amendatory act of 1896, 22 Stat., 237, in section 25, corresponding to section 11, in the original act, "may" was substituted for "shall," and thus became incorporated as section 1381, *supra.* In view of this change of language by the Legislature, it cannot be said that the clear intention of the Legislature was to make it the imperative duty of county and city officers to advertise in a county newspaper for competitive bids for road or street improvement to be let by contract to the lowest responsible bidder. On the contrary, the natural inference is that the legislative intent was to allow such officers a discretion.

But if it should be conceded that it is the duty of such officers to advertise in a county newspaper for competitive bids when such work is to be let out by contract, it does not follow that a contract made without such advertising is void, unless the statute requires such as a condition for the exercise of the power to contract. It is only "where the power to let such contracts is *dependent* upon conditions and restrictions of this nature that a failure to comply with such necessary conditions constitutes sufficient ground for relief by injunction against the construction of the proposed improvement of awarding a contract therefor." 2 High on Injunctions, 2d ed., sec. 1251. This is illustrated by cases cited for petitioner. For example, in *State* v.

*Toole,* 26 Mont., 22, 91 Am. St. Rep., 394, the advertisement inviting proposals was not published according to law, and the contract was held unauthorized because the statute provided that "before any contract is let the board must advertise," etc.   So, in *Inge* v. *Board of Public Works,* 135 Ala., 187, 93 Am. St. Rep., 20, it was held that a compliance with mandatory provisions of the statutes as to advertising was essential to the power to contract when the statute provided that such contract shall be let to the lowest responsible bidder after advertising for bids, and that "said board shall have no power to pledge the credit of the city except as herein provided."   But there are no such positive statutory limitations on the power of the city council of Spartanburg to contract for the street improvement in question, and petitioner's contention in this regard furnishes no ground for injunction.

2. It is further contended by petitioner that the contract was void because not let to the lowest bidder, as shown by bids received and considered on March 26, 1906; and that it was illegal for the city council, after rejecting all bids on that day, to enter into further negotiations with the two lowest bidders, instead of reopening the matter to full competition among all the bidders.   We see no ground for interference on this account. It will be observed that no one claiming to be the lowest bidder is objecting.   The plaintiff only is objecting in his right as a taxpayer, and it is incumbent on him to show some injury threatened to him as such by the contract in question. The contract, as matter of fact, was awarded to the lowest bidder, and the subsequent negotiations, instead of being injurious to the taxpayers, were in their interest, and very advantageous to them in securing a substantial reduction from said lowest bid, amounting to a saving to the taxpayers of twenty-two cents per square yard, or about thirteen thousand dollars on the contract.

3. The petitioner also contends that the call for bids was so framed as to cut off full and free competition, in

that there was a requirement that the contractor to whom
the award is made shall furnish a bond in the sum of twenty-
five thousand dollars to guarantee the faithful performance
of the work, to defend, indemnify and save harmless
the city council against any suit, loss, damage or ex-
pense by reason of any negligence or default, want of
skill or care on the part of the contractor, his agents or em-
ployees, etc., in the performance of said work, requiring
the contractor to guarantee and keep in repair said pavement
for one year, and retaining ten per cent. of the total amount
of the contract for one year.    It is contended that these pro-
visions rendered the contract void, since they naturally
tended to cause the contractor to increase the amount of his
bid and thus increase the burden on the taxpayers.    On
this point petitioner cites: *Portland* v. *Bituminous Paving
Co.,* 33 Oregon, 307, 72 Am. St. Rep., 713; *Alameda
Macadamizing Co.* v. *Pringle,* 130 Cal., 226, 80 Am. St.
Rep., 124.    The first mentioned case was an action upon a
bond given by defendant in a street paving transaction, and
conditioned upon defendant's keeping the pavement in repair
for five years, and decides that a city having power to repair
its streets  and to assess the cost against abutting property
is empowered only to make provision for repairs demanded
by present exigencies, and it is *ultra vires* for it to levy the
estimated cost of anticipated future repairs against the
property of individuals, and that such city has no power to
incorporate in a street paving contract a condition that the
contractor shall keep up repairs for a period of five years;
the effect of such provision being to increase the contract
price and impose upon abutting owners an added burden on
account of anticipated repairs.    The second named case
was an action to foreclose a street assessment lien upon
abutting property, and decides that a municipal ordinance
requiring a contractor for street improvements to file a bond
guaranteeing the work for one year from injury by ordinary
use, is unauthorized, increasing the burden of the property
owners.    These cases depend upon the law of the particular

States involved, which denies to city authorities the power to assess abutting property owners for the cost of future anticipated street repairs, and can have no application to the present controversy and the facts of this case. The defendant company voluntarily signed the bond in this case and makes no objections to its provisions. The plaintiff, as taxpayer, is not interested to impeach or restrain the transaction unless some burden is thereby illegally placed upon him. The money arising from the sale of the bonds issued for improvement of the streets and sidewalks of Spartanburg will undoubtedly have to come finally from the taxpayers in paying for interest and final redemption of the bonds, but the fund was provided for the specific purpose of meeting anticipated street improvement. We regard the provisions of the contractor's bond as a reasonable and suitable guarantee for the faithful performance of the contract, within the discretionary power of the city council to require, and advantageous to the plaintiff as taxpayer in safeguarding the expenditure of the city funds. If such provision should naturally tend to increase the cost of the improvement, the taxpayer has an ample *quid pro quo* in the guarantee that the work shall be carefully and skillfully done according to the specifications.

4. The petitioner finally contends that the city council had no power to contract for the use of patented articles in improving the streets, as it tended to create a monopoly and destroy competition. This contention is based upon the fact that the construction of bitulithic pavement under the specifications and contract involved the use of "Warren's No. 24 Puritan Brand Hard Bituminous Cement, Warren's Puritan Brand, No. 21, Bituminous Water Proof Cement, and Warren's Quick Drying Bituminous Flush Coat Composition," articles or materials covered and protected by letters patent issued by the United States and controlled by Warren Brothers' Company, and Southern Bitulithic Company. The contention is that there can be no real competition when the specifications require

the use of an article which is the subject of monopoly. On this proposition petitioner cites many cases, among which are *Dean* v. *Charlton,* 23 Wis., 590, 99 Am. Dec., 205; but see modification in *Kilvington* v. *Superior* (Wis.), 18 L. R. A., 45; *Fishburn v. Chicago,* 171 Ill., 338, 63 Am. St. Rep., 236, 39 L. R. A., 482; *Seigel* v. *Chicago,* 79 N. E., Rep., 280; *Feneran* v. *Central Beth. Co.* (Ky.), S. W., 415; *Monoghan* v. *Indianapolis* (Ind.), 75 N. E. Rep., 33; *City of Atlanta* v. *Stein,* 111 Ga., 789, 36 S. E. Rep., 932; *Smith* v. *Syracuse Imp. Co.* (N. Y.), 55 N. E. Rep., 1077; *Burgess* v. *Jefferson,* 21 La. Ann., 143; *State* v. *City of Elizabeth,* 35 N. J. Law, 351; *Nicholson Paving Company* v. *Painter,* 35 Cal., 699; but see modification in *Perine etc. Co.* v. *Quackenbush,* 104 Cal., 684, 38 Pac., 533. A contrary view is supported, however, by numerous citations, among which are *Hobart* v. *Detroit,* 17 Mich., 246, 97 Am. Dec., 185; *Holmes* v. *Common Council* (Mich.), 45 L. R. A., 121, 77 Am., St. Rep., 587; *Barber Asphalt Paving Co. v. Hunt,* 100 Mo., 22, 8 L. R. A., 110; *Field* v. *Barber Asphalt Pav. Co.* (C. C.), 117 Fed. Rep., 925; *Hastings* v. *Columbus,* 42 Ohio St., 585; *In re Dugro,* 50 N. Y., 513; followed in *Baird* v. *New York,* 96 N. Y., 567.

The view we take renders it unnecessary to make detailed reference to the various cases *pro et contra* on this subject. The keystone of the argument in support of the Wisconsin line of cases is that where the statute requires competitive bidding, after advertising, as a condition precedent to the power of the municipality to contract for street improvement, the statute is violated when the city ordinance or contract specifications require the use of a patented or monopolized article, because there can be no real competition when the bidding is practically restricted to the individual or corporation controlling the patent; on the other hand, the fundamental reason supporting the Michigan line of cases is that even where the statute requires competitive bidding, it is not violated, or does not apply, when all the competition is allowed which the situation permits; that a

municipality should not be denied the right, for the benefit of its citizens, to avail itself of useful inventions and discoveries, even though protected by patents; and that when a city exercising its power to make public improvements in good faith decides to contract for the use of patented articles, there is created no monopoly and no abatement in competition beyond what necessarily results from the rights and privileges given the patentee by the Federal Government. The question is admittedly close, but we incline to the latter view as best supported by reason and the weight of authority.

With respect to the competition allowed in this case, it must be remembered that the sharpest competition was sought and provided for among contractors for various kinds of pavement, including brick, asphalt block, and bitulithic pavement; specifications for each class of pavement were made, and the city council in the advertisement reserved the right, accorded by law, to reject any bid, and also to reserve the right to decide upon the material to be used after the opening of the bids, and did not determine to have bitulithic pavement until it appeared that the bid therefor was the lowest made for any specified kind of pavement.

Furthermore, it appears that the city council, in order to enable any bidder to secure the material and process covered by such patents, secured from patentees in advance their offer to furnish said material to any bidder at a fixed price, together with an explanation of their methods and material for construction. It is not doubtful that, if an award had been made to another competitor bidding for bitulithic pavement upon the faith of the offer of the patentee on file with specifications, such holder would have a right to demand and receive such materials upon compliance with the offer. In view of these facts, there was allowed all the competition which in the nature of things was possible. But a conclusive reason for sustaining the validity of the contract in question is that there is no statute in this State

which compels the city of Spartanburg to submit this matter to competitive bidding.

There is nothing in the record to suggest fraud or abuse of discretion on the part of the city council, and as the awarding of the contract to the defendant company was within the power of the city council, there is no equity to restrain the performance of the contract.