[File No. 6859.]

CHAS. A. LYCHE, as Executor of the Last Will and Testament of Gunerius A. Berg, Deceased, Appellant, v. STEELE COUNTY, NORTH DAKOTA, a Public Corporation, H. R. Stark et al., Its County Commissioners, G. J. Mustad, Its County Auditor, Cora Williams, Its County Treasurer; and Beatta Huus Balyeat, Respondents.

(6 NW(2d) 92.)

Opinion filed November 4, 1942.

*Lyche & Lyche,* for appellant.
*M. W. Duffy,* for respondents.
*G. J. Clauson,* for respondent Balyeat.

MORRIS, J.   This action involves title to a half section of land in Steele county.   From the evidence and admissions in the pleadings we glean the following facts:   Gunerius A. Berg at the time of his death on February 11, 1935, was the owner of three quarter sections of land in Steele county.   He left as heirs several children some of whom live in Norway and some in America.   Two of them, Edgar Berg and Clifford Berg, live in Grand Forks, North Dakota.   Charles A. Lyche was appointed executor of the last will and testament of the deceased and took charge of the estate which consisted only of the land above mentioned.   The title to the land passed to Steele county through tax proceedings and a tax deed was issued to the county therefor sometime prior to November 19, 1940.   The county advertised the land for sale pursuant to the provisions of chapter 235, ND Session Laws 1939.   The sale was held at ten o'clock A. M., November 19, 1940, at the county seat.   The defendant Beatta Huus Balyeat claims to have purchased a half section of this land at that sale and has produced two deeds from Steele county both executed by the chairman of the board of county commissioners and county auditor.   The deeds are dated and acknowledged under the date of November 19, 1940.   One deed conveys to Beatta Huus Balyeat the SW quarter and the other the NW quarter of section 23, township 148, range 55, Steele county.

On March 30, 1942, the plaintiff deposited in the district court pursuant to an order thereof the sum of $3,036, in compliance with the provisions of § 2, chapter 235, ND Session Laws 1939.

The plaintiff claims to have made redemption of these lands together with the other quarter belonging to the estate of Gunerius A. Berg before sale thereof by the county.   He asserts that this redemption was made pursuant to the provisions of chapter 238, ND Session Laws 1939, § 1 of which provides: "Any real estate heretofore or hereafter forfeited to the county under tax deed proceedings, shall be subject to redemption by the owner whose title was forfeited, or his successor in interest, at any time while the tax title thereto remains in such

county and prior to resale, upon the payment of the amount which would have been required to effect a redemption had no tax deed been issued thereon, plus interest at the rate of four (4%) per cent per annum, from the date of the execution of such tax deed; provided that such right of redemption shall not interfere with the existing right of the county to resell real estate acquired by tax deed at any time as otherwise provided by law. Where a redemption is made under this act, the county auditor shall execute a quitclaim deed in behalf of the county for such real estate to the person making such redemption." The district court found that no redemption had been made and rendered judgment quieting title in Beatta Huus Balyeat pursuant to the prayer of her answer to plaintiff's complaint.

When the executor who lives in Grand Forks learned of the impending sale he took the matter up with Edgar and Clifford Berg who also live in Grand Forks "to see if they would advance the money to save the lands, but their answer was that it was so taxridden that it was pretty hard to do anything." He then took the matter up with one Carl A. Meldahl who had been a friend and neighbor of the deceased. There is considerable conflict in the testimony and contentions as to the arrangement that was made between the executor and Mr. Meldahl. Several days before the sale the excutor called the county auditor of Steele county and advised him that he would be over to his office on the morning of November 19, the date of sale. On that morning he did appear at the county auditor's office and advised that official that he was ready to repurchase and redeem the land and had the money. He did not at that time present either money or checks to make the redemption. Carl A. Meldahl was with him but did not enter the auditor's office. He stayed out in the courthouse hall. The executor and Mr. Meldahl left the courthouse without seeing anyone else and went to the office of Elmer T. Meldahl who is the son of Carl A. Meldahl and who was also state's attorney of Steele county. Elmer T. Meldahl called the county auditor and ascertained the amount of taxes owing on the Berg lands. Carl A. Meldahl then drew two checks; one for the amount due on the half section purchased by Mrs. Balyeat and the other for the amount due on the remaining quarter section. These

checks were left with Elmer T. Meldahl and the executor and Mr. Carl A. Meldahl left and went back home.

Elmer T. Meldahl testified that to the best of his knowledge he took the checks to the county auditor during the afternoon of November 19, 1940. The county auditor testified that the checks were not brought to his office on November 19.

The members of the board of county commissioners testified that the board went into session on November 19, 1940, at about ten o'clock A. M. and proceeded to examine bids that were submitted for various tracts of land that had been advertised for sale by the county. These bids were opened and considered within the next 10 or 15 minutes. The Berg lands were considered and the bid of Mrs. Balyeat for the half section of land herein involved in the sum of $3,000 was accepted. Later the executor of the Berg estate came to the county auditor's private office but did not come into the county commissioner's room. That was between 11:30 and 12 o'clock.

According to the testimony of the county commissioners, Carl A. Meldahl came to their office on November 20 and left the two checks heretofore referred to. He was told that one quarter of the Berg land could still be had but the other half section had been sold. The board of county commissioners was still in session on November 22. On that day Carl A. Meldahl came back and demanded that his checks be returned. This demand was complied with and he signed a receipt for the checks and left it with the county commissioners.

The executor contends that he borrowed the money from Carl A. Meldahl to repurchase the Berg lands and that he was to give Mr. Meldahl a mortgage. No petition for license to mortgage was made to the county court by the executor. Mr. Meldahl's testimony is somewhat conflicting as to the arrangement under which he was making payment. On direct examination he testified that he was to get a mortgage. Later he testified that he was buying the land and again he said that he was to get the land. The final testimony was that he was buying the land through the executor and not through the county. The trial court in his memorandum opinion indicates that he reached the conclusion that Carl A. Meldahl was buying the land but that even

if his acts be considered as being in behalf of the executor the offer to redeem or repurchase came after the land had been sold to Mrs. Balyeat and that no redemption or repurchase was made under the provisions of chapter 238, ND Session Laws 1939.

The sale was advertised for 10 o'clock A. M., November 19, 1940. It is clear from the record that no tender of either checks or cash was made to the county auditor or to the board of county commissioners prior to the acceptance of Mrs. Balyeat's bid. The executor went to the county auditor's office and told him that he would redeem the land but did not make nor attempt to make a tender. The earliest intimation in any of the testimony of the presentation of the checks was in the testimony of Elmer T. Meldahl who stated that to the best of his recollection he took the checks to the county auditor's office on the afternoon of November 19. The county auditor does not recollect that checks were so presented and four members of the board of county commissioners testified that Carl A. Meldahl presented the checks in person to the board of county commissioners on the following day November 20 and demanded and received them back on the 22d. When the bids were opened the only bid for the Berg land involved in this case was that of the defendant Mrs. Balyeat who bid $3,000 in cash. Her bid was in writing and accompanied by a bank draft for $750. Upon consideration of this bid by the board of county commissioners at about 10:15 A. M. on November 19, a motion was made, seconded, voted upon and passed that the bid be accepted by the board of county commissioners.

Leaving aside the question of whether Carl A. Meldahl attempted to buy the Berg land direct from the county or whether he was acting through and on behalf of the executor of the Berg estate no tender was made until after the and had been sold to Mrs. Balyeat.

The sale was made under the provisions of chapter 235, ND Session Laws 1939, which authorizes the sale of property acquired by the county through tax deed. The record of the proceedings leading up to the sale is not in evidence but no attack is made upon its regularity. The statute requires "Each parcel shall be sold to the highest bidder therefor but not for a sum less than the minimum sales price finally

fixed by the board of county commissioners unless the governing body of the city, village or township where such property is located, by resolution, consents to an amount less than such minimum price." Since the record clearly indicates that there was no redemption or payment of taxes by the executor prior to 10:15 A. M., November 19, when Mrs. Balyeat's bid was opened and formally accepted by the county commissioners, it is important to determine whether the action of the board constituted a sale to her of the property.

The statute above cited clearly requires the sale of the property to the highest bidder. Mrs. Balyeat was such bidder and her bid was accepted. The statutory proceedings surrounding the sale involve no judicial procedure. The sale requires no confirmation by any court. The question of whether sale of certain property under the statute actually took place is closely akin to a question of when a sale takes place at public auction. The rules governing such statutory sales are analogous to the rules governing auction sales. Williston, Contracts, Rev ed, § 31; Blossom v. Milwaukee & C. R. Co. 3 Wall. (US) 196, 18 L ed 43.

The rule that prevails with reference to auction sales is that the contract becomes complete when the bid is accepted. 5 Am Jur 455, Auctions, § 17; McPherson Bros. Co. v. Okanogan County, 45 Wash 285, 88 P 199, 9 LRA (NS) 748; Anderson v. Wisconsin C. R. Co. 107 Minn 296, 120 NW 39, 20 LRA (NS) 1133, 131 Am St Rep 462, 16 Ann Cas 379.

Also somewhat analogous to the situation before us is the letting of public contracts through the medium of bids. It is usually held that the acceptance of a valid bid by proper authorities constitutes a binding contract where statutory requirements have been observed. Wiles v. Hoss, 114 Ind 371, 16 NE 800; Denton v. Atchison, 34 Kan 438, 8 P 750; State ex rel. Robert Mitchell Furniture Co. v. Toole, 26 Mont 22, 66 P 496, 55 LRA 644, 91 Am St Rep 386; United States v. Conti, (CCA1st) 119 F (2d) 652.

Mrs. Balyeat was in no manner disqualified as a purchaser at the sale as advertised by Steele county. She submitted a legal and proper bid for the land in question. It was opened and considered by the board of county commissioners at the proper time and place. The land

had not been redeemed. The commissioners had authority to accept the bid and did accept it. The bid constituted an offer. The acceptance of the bid by the county commissioners, being legal and valid in every respect, completed a bilateral contract between the bidder and the county. Mrs. Balyeat thus became the purchaser of the land. She was legally bound to pay the purchase price and the county was obligated to convey the land to her. The subsequent attempt on the part of the executor through Carl A. Meldahl to redeem or repurchase the land came too late. The land had already been sold. The judgment must be affirmed.

BURR, Ch. J., and BURKE, NUESSLE, and CHRISTIANSON, JJ., concur.