## Richmond

Sol Adelman, Dorothy Adelman, Abe Kramer, Robert S.
Buckhantz, Adele A. Buckhantz, and Ethel Wolf,
Individually and as Executrix of the Estate of
Charles Wolf, Deceased v. C. Louis Caputi
and Real Estate Service, Inc.

June 14, 1971.

Record No. 7513.

Present, Snead, C.J., I'Anson, Gordon, Harrison, Cochran and Harman, JJ.

*Thomas G. Mays* (*J. Robert McAllister, III*, on brief), for plaintiffs in error.

*C. Wynne Tolbert* (*Tolbert, Lewis & FitzGerald*, on brief), for defendants in error.

Harrison, J., delivered the opinion of the court.

The plaintiffs in the court below, C. Louis Caputi and Real Estate Service, Inc., recovered a judgment against the defendants, Sol Adelman, Dorothy Adelman, Abe Kramer, Robert S. Buckhantz, Adele A. Buckhantz and Ethel Wolf, individually and as executrix of the estate of Charles Wolf, deceased, for $22,950, with interest and costs. The recovery represents real estate commissions which the court held were due plaintiffs by defendants, who prosecute this appeal.

This case was heard ore tenus, and the trial judge made certain findings of fact, as follows: that on or about February 29, 1968 Sol Adelman, as agent for and with the authority of the other defendants, entered into a listing agreement with the plaintiff Caputi, a licensed real estate broker, wherein Caputi was authorized to sell the Park Terrace Apartments, containing 153 units, located in the Town of Vienna, Virginia, and owned jointly by defendants; that the listing was oral and provided that defendants pay Caputi a commission amounting to 10% of the defendants' equity in the property if the broker produced a purchaser ready, willing and able to purchase the property on terms which amounted to $1,500 per apartment unit, a total of $229,500 in cash, over and above the balance due on the existing mortgage indebtedness thereon; and that some sort of assumption was contemplated so that the purchasers would not be required to pay off the mortgage at settlement.

Caputi "co-listed" the property with the plaintiff Real Estate Service, Inc. on an equal participation basis. The two brokers attempted over a period of months to sell the property. It is conceded that all the owners knew of the sale efforts being made by Caputi and the amount of the sale price.

On or about November 27, 1968 the plaintiff brokers procured a written offer from Hallmark Homes, Inc. to purchase the property, which was delivered to Adelman on November 29, 1968. It provided for the payment by the purchaser of $229,500 in cash, at settlement, with the purchasers to take title subject to the existing deed of trust in the approximate amount of $1,052,000, the exact amount to be determined on date of settlement.

Upon receipt of the written offer by Hallmark, Adelman conferred with his defendant co-owners and then advised Caputi that "the contract was perfect, exactly what we wanted . . . but it seems my partners now don't want to sell it. [L]eave it with me for a few days and we are going to meet again to talk about it". Thereafter Caputi and James H. McMullin, president of Real Estate Service, Inc., met with Adelman who again said that the contract was "perfect", but that he was having difficulties with his partners who had become reluctant to sell. Adelman expressed a desire to sell. He said that although Mr. Buckhantz agreed, the other co-owners had decided that the price which they had asked for the apartment development was less than its reproduction cost.

There is testimony that during the period between listing and offer

the number of vacant apartments had declined and the property had become a more attractive investment in November 1968 than it had been in February 1968. In the opinion of some of the co-owners it had a greater value than the price fixed at the time of listing.

The trial court concluded that Adelman acted as agent for himself and the remaining defendants with full authority to bind them to a contract employing a broker; that the brokers produced a purchaser ready, willing and able to purchase the property upon the owners' terms contained in the listing agreement; that, as is customary in such cases, the offer took the form of a proposed contract containing many detailed provisions as to which the brief listing had been silent; and that the terms of the offer procured by the brokers did not contravene the terms of the listing agreement and did not render the offer void, uncertain, contingent or conditional.

The trial court further held that although the terms of the offer imposed certain burdens upon the sellers, not mentioned in their listing agreement, it was unnecessary to rule upon whether such additional burdens would have afforded the sellers an excuse for nonperformance. This last conclusion was predicated on "the conduct of Adelman in making an admittedly less-than-candid response to the offer" which the court held "estops the defendants from reliance upon these objections, however valid they might have been." The court also held that under the facts it was unnecessary for the plaintiffs to prove that the objections were of such character that they could have been removed or satisfied by the plaintiffs had they been candidly stated.

The position of defendants is that at best the brokers had a "special listing or contract" and that the written offer to purchase by Hallmark Homes, Inc. contained material variations from the listing. Among the variations of which defendants complain are that the contract could be assigned; that the deposit was evidenced by a check of the purchaser for $5,000 and a 20-day note of the purchaser for $25,000, both payable to the purchaser's attorney; that the property was to be conveyed subject to the deed of trust, not assumed; that settlement was to be effected within 120 days; that the sellers were to terminate their present rental management agreement; and that the sellers would warrant all appliances, plumbing, heating, air conditioning and electrical system.

Admittedly the written offer to purchase by Hallmark Homes, Inc. did contain a number of stipulations and conditions, some having

been mentioned above, and others pertaining to the usual and customary details incident to closing a large real estate transaction. However, in February when the defendants, through Sol Adelman, made a listing agreement with Caputi, none of the stipulations now complained of were mentioned or made a condition of sale. At that time only two critical conditions were attached to the listing: (1) The broker was to be entitled to a 10% commission on the defendants' equity in the property, not the entire sales price; and (2) To earn this commission the broker was to obtain a buyer ready, willing and able to purchase the property and pay cash, $1,500 per unit, for 153 units ($229,500), and subject to an existing mortgage thereon.

This was Caputi's undertaking with the defendants. He and his co-broker devoted their time and labor and expended their money to this end. In November 1968 they succeeded and produced a written offer from Hallmark to buy. When the offer was submitted defendants held a series of meetings and concluded not to accept it. There is evidence to support the trial court's finding that the contract was rejected because Adelman's partners "had been reluctant to sell" and because they had concluded that the price for which it had been listed with the brokers was inadequate.

At the time defendants rejected Hallmark's written offer no opportunity was given either the brokers or Hallmark to consider or remove the objections which are now being voiced to the terms.

The various provisions that were incorporated cannot be labeled as variations from the listing for the listing embraced only two critical conditions: brokers' commissions and cash to be paid over the existing mortgage. The offer by the purchaser did not vary the terms of the listing, and it did not constitute a counter offer. It was an unqualified acceptance of the terms of the listing, with the buyers' suggestions as to the terms, time and details of settlement.

It is unnecessary that we review the numerous cases cited by plaintiffs and defendants, wherein this court has considered the circumstances under which a real estate broker should recover or be denied recovery for commissions. All are factually different from the case under review.

The most recent case is the one relied upon by counsel for defendants at oral argument, *Quality Home Builders* v. *Herrick*, 210 Va. 723, 173 S. E. 2d 846 (1970). There, as in the instant case, a sale of an apartment building was involved. We assumed a special contract between the broker and the seller. The listing in *Quality*

*Homes* specifically provided that the seller was to receive a sum certain net for his property. Unlike the instant case, the broker there never procured a purchaser ready, willing and able to buy the property according to the terms of his contract with the seller, that is, a buyer who would pay the seller the net amount which the seller had agreed to accept.

Here we have the reverse situation. The plaintiffs did obtain a buyer who was ready, willing and able to pay the agreed purchase price, who did make a concrete written offer to pay the agreed purchase price and who was prepared to make a good faith deposit upon the execution of the contract by the seller.

Among the conditions in the written offer complained of by defendants is the suggested 120 days allowed for settlement, and the fact that during this time the amount of the mortgage would have been reduced by $24,000. However, this contingency was not regarded as critical enough to have been mentioned at the time of the property's listing with Caputi. Presumably the mortgage payments were made between the listing in February and the offer by Hallmark in November, and the principal of the mortgage was accordingly reduced during that interim. We assume that defendants collected rents on the apartments during that period, and would have continued to collect the rents during the time allowed for settlement.

With reference to settlement terms, in 12 Am. Jur. 2d *Brokers* § 200, at 943 (1964), it is said:

> "Frequently, where property is given to a broker for sale there are many minor details concerning the closing of the deal or similar matters which are not specified in the listing of the property or in the offer to purchase. These include the time to be allowed for the title search and passing of papers, the furnishing of an abstract of title, the time and place for passing the papers and making the payment, and the time for change of possession. It generally has been held that a landowner cannot defend a broker's action for commissions on the ground that the offer contained provisions of that sort which were not contained in the listing agreement, or that the agreement was silent whereas the listing mentioned such matters, where the landowner did not specify such objections when rejecting the offer. Nor can the landowner ordinarily raise objections as to the terms of payment where he did not do so when rejecting the prospective purchaser's offer."

In Annot., 156 A. L. R. 602 (1945) will be found a collection of cases from numerous jurisdictions dealing with "Failure, when refusing offer to purchase land, to state ground therefor as affecting right to assert such ground in defense of broker's action for compensation." The following quotation therefrom is pertinent here:

"[I]n a case where a landowner has listed property for sale with a broker, and the latter has procured an oral offer from a prospect so easily that the owner concludes he should have asked more for the property, for which reason he rejects the offer and gives the standard excuse that his wife will not let him sell, or he frankly states that he has decided that he wants more money, a question arises as to whether he may later defend the broker's action for commissions or other compensation by asserting other matters not discussed when refusing the offer, such as that the broker did not bring the owner and the prospective purchaser together, that the broker did not procure a signed contract, that the broker did not tender the purchase price or the down payment in cash with the offer, or that the broker procured an offer which required the owner to give an abstract of title. As will be seen in III, infra,[1] as a general rule, none of these matters may be raised as a defense under such circumstances.

\* \* \*

"As a general rule, where a landowner who has listed property for sale with a real-estate broker refuses to accept an offer which is substantially in accordance with the listing, he cannot afterwards defend the broker's action for compensation on a ground not specified when rejecting the offer." *Id.* at 602.

As was held by the court below, we need not concern ourselves here with the substance or validity of the objections interposed to Hallmark's offer, or to whether or not these objections could have been removed or satisfactorily adjusted between the sellers, the purchaser and the brokers. The trial court has found that the offer was rejected because the sellers had changed their minds about the amount they were willing to accept for a sale of the property.

The findings of fact by the trial judge are fully supported by the evidence, and we find no error in his conclusions of law. The judgment of the lower court is

*Affirmed.*

---

[1] "III. Specific grounds not stated." *Id.* at 605.