JOHN C. CHILDS, SR. ET AL. *v.* FRANK P. RAGONESE
ET AL.

[No. 45, September Term, 1982.]

*Decided June 1, 1983.*

The cause was argued before Murphy, C. J., and Smith, Eldridge, Cole and Davidson, JJ.

*Neil Tabor* for appellants.

*Nathan Patz,* with whom was *Alan A. Abramowitz* on the brief, for appellees.

Eldridge, J., delivered the opinion of the Court. Cole, J., dissents and filed a dissenting opinion at page 140 *infra.*

The question presented in this case is whether, under a contract between a seller of real property and an auctioneer, which provides that the auctioneer be paid a commission if the property is "sold," the auctioneer is entitled to retain his full commission when the successful bidder at the public auction refuses to consummate the sale.

John C. Childs and several partners trading under the title of Paradise Joint Venture (collectively hereinafter referred to as Childs) owned a parcel of land located in Harford County. They entered into an employment contract with an auctioneer, A. J. Billig and Company (Billig), whereby Billig was to "sell" the land at a public or a private sale. The contract, prepared by Billig, provided for the payment of five percent of the sale price to Billig as a commission should the property be "sold." The contract stated (italics added):

> "We hereby employ A. J. BILLIG & COMPANY, duly licensed Auctioneers, as *Our* exclusive Agents *to sell* either by public or private sale *Our* property as above described. This exclusive employment is to continue for a period of 30 days. If the said property

*is sold* during the life of this contract by the said Auctioneers or by the Owners, or through any other agency or broker, or if the owner during the life of this contract should withdraw the property prior to its offering, the said owners, in consideration of the acceptance of such employment by said Auctioneers, hereby agree ____to pay said Auctioneers a commission on the amount for which the property *is sold,* or, if said property be withdrawn from sale, a commission on the above price [$246,000.00] for said property, according to the rates printed on the reverse side hereof, plus all advertising costs not to exceed the sum of $1500.00, which advertising costs shall also be paid by the owners. In the event the property is offered at public auction and is not sold because of an inadequacy of bid or bids, owners shall pay to the Auctioneers for such public auction offering a fee of $750.00, plus such advertising costs. Executed at Baltimore, Md. on 11/8 1977."

Thereafter a public auction was conducted by Billig, and the high bidder was Parkview Construction Company at a bid of $245,775.00. Immediately following the bidding, a written contract of sale was entered into between Parkview and Childs, and a deposit in the amount of $20,000.00 was made by Parkview. The deposit was in the form of a check payable to the order of Frank P. Ragonese, the principal stockholder of Parkview, and endorsed by Ragonese to Billig. The balance of the purchase money was to be paid and settlement was to occur in 60 days. After deducting advertising expenses of $802.38 and a full commission in the amount of $12,228.75 (5 percent of $245,775.00) from the deposit, Billig remitted $6,908.87 to Childs.

Subsequently Parkview refused to close the land transaction and elected to forfeit the deposit because, according to Ragonese, proper financing was not available. Billig refused to return to Childs the $12,228.75 commission, although the auctioneer offered to conduct another auction of the property without charging additional fees or an addi-

tional commission. This offer was rejected by the vendors who employed a different auctioneer, Alex Cooper, Inc., to procure a purchaser.[1]

Childs then brought the present action against Billig in the Superior Court of Baltimore City, seeking damages for Billig's refusal to return the commission. Following a trial, the Superior Court entered judgment in favor of Billig. The court determined that an auctioneer "comes within the purview" of Maryland Code (1974, 1981 Repl. Vol.), § 14-105 of the Real Property Article which provides that whenever, in the absence of a special agreement to the contrary, a real estate broker employed to sell real estate procures a purchaser, and the person procured is accepted by the employer, and enters a valid, binding and enforceable written contract of sale in terms acceptable to the employer, the real estate broker shall be deemed to have earned his commission even though the sale is not consummated. Thus, according to the court, Billig earned his commission upon execution of the contract of sale between Childs and Ragonese. The court held that there was no special agreement to the contrary which would render the statute inapplicable.

Childs appealed to the Court of Special Appeals which affirmed the judgment in favor of Billig. *Childs v. Ragonese,* 51 Md.App. 428, 443 A.2d 665 (1982). The appellate court, however, disagreed with the trial court's reasoning and held that § 14-105 of the Real Property Article was not applicable to auctioneers. 51 Md.App. at 431. Instead, the Court of Special Appeals based its decision on the holding by courts in some other jurisdictions that an auctioneer is "entitled to commissions if he is the procuring cause of a sale, even if, without his fault, the contract of sale is rescinded or abandoned." *Id.* at 432.

We subsequently granted Childs's petition for a writ of certiorari, *Childs v. Ragonese,* 293 Md. 651 (1982).

---

1. Following the second auction, the high bidder, Paradise Meadow Inc., submitted a deposit and consummated the sale of the property. A commission (3.5 percent of the sale price of $204,812.40) and fees were paid to Alex Cooper, Inc. by Childs.

The parties have presented us with two issues, one of statutory interpretation and one of contract interpretation. Childs contends that § 14-105 of the Real Property Article is inapplicable to auctioneers and that the words "sell" and "sold" in the employment contract denote a consummated sale. Consequently, according to Childs, under the employment contract Billig was required to return the commission when Parkview refused to close the transaction. Billig, on the other hand, argues that § 14-105 does apply to this case, entitling the auctioneer to his full commission upon the execution of the contract of sale with Parkview. Alternatively, Billig maintains that the words "sell" and "sold" in the employment agreement refer to a contract of sale and not a consummated sale.

### I.

Section 14-105 of the Real Property Article provides as follows:

"§ 14-105. When real estate broker entitled to commission.

In the absence of special agreement to the contrary, if a real estate broker employed to sell, buy, lease, or otherwise negotiate an estate, or a mortgage or loan secured by the property, procures in good faith a purchaser, vendor, lessor, lessee, mortgagor, mortgagee, borrower, or lender, as the case may be, and the person procured is accepted by the employer and enters into a valid, binding, and enforceable written contract, in terms acceptable to the employer, of a sale, purchase, lease, mortgage, loan, or other contract, as the case may be, and the contract is accepted by the employer and signed by him, the broker is deemed to have earned the customary or agreed commission. He has earned the commission regardless of whether or not the contract entered in to is performed, unless the performance of the contract is prevented, hindered, or delayed by any act of the broker."

Although this statute, first enacted by Ch. 178 of the Acts of 1910, has been dealt with in numerous cases,[2] this Court has not previously considered whether it is applicable to contracts employing auctioneers to sell real estate.

By its very language, however, the statute does not cover auctioneers. It speaks only of "a real estate broker" and the time such "broker" is deemed to have earned his commission.

Moreover, this Court has consistently refused to extend § 14-105 beyond its literal terms. For example, even though the statute covers the employment of a real estate broker to negotiate mortgages, the Court has held that the statute has no application to a mortgage broker. *Bregel v. Cooper,* 161 Md. 416, 420, 157 A. 719 (1931); *Navarre Realty Co. v. Coale,* 122 Md. 494, 501, 89 A. 728 (1914). For other cases declining to apply the statute beyond its literal terms, *see, e.g., Wyand v. Patterson Agency,* 271 Md. 617, 619-620, 319 A.2d 308 (1974) (statute inapplicable where plaintiff real estate broker, with an exclusive listing, was not the procuring cause of the sale); *Mullineaux v. Voltz,* 150 Md. 114, 117-118, 132 A. 594 (1926) (where a real estate broker was employed to sell a farm, including both real estate and personal property, and the contract did not show what part of the commission was for real estate and what part was for personalty, the statute was held to be inapplicable); *Wood v. Standard Phosphate Co.,* 140 Md. 654, 657, 118 A. 179 (1922) (indicating that brokerage commissions for the sale of personalty are not governed by the statute).

When the real estate brokers' commission statute, now codified as § 14-105 of the Real Property Article, was first enacted in 1910, the Legislature clearly distinguished real estate brokers from auctioneers. Code (1904), Art. 56, § 7,

---

**2.** *E.g.,* DeFranceaux Realty Group v. Leeth, 283 Md. 611, 614, 618, 391 A.2d 1209 (1978); Berman v. Hall, 275 Md. 434, 437, 340 A.2d 251 (1975); MacWilliams v. Bright, 273 Md. 632, 636, 331 A.2d 303 (1975); Nily Realty v. Wood, 272 Md. 589, 595, 325 A.2d 730 (1974); Cohen v. Duclos, 272 Md. 41, 44-46, 321 A.2d 145 (1974); Wyand v. Patterson Agency, 271 Md. 617, 623-625, 319 A.2d 308 (1974); Snider Bros., Inc. v. Heft, 271 Md. 409, 415-416, 317 A.2d 848 (1974), and cases there cited.

provided for the licensing of an "auctioneer," and Art. 56, §§ 12-13, provided for the licensing of a "real estate broker." The provisions applicable to each, including the license fee, were different. If the Legislature intended that auctioneers be covered by the real estate brokers' commission statute, it is likely that the word "auctioneer" would have been used.

We agree with the Court of Special Appeals that § 14-105 of the Real Property Article has no application to an auctioneer.

## II.

With regard to an agreement entitling an agent to a commission upon the sale, purchase, lease, or other transaction concerning property, it is settled in Maryland, absent statute or an express agreement to the contrary, that words such as "sell," "sold," "sale," "purchase," "lease," refer to a consummated transaction and not merely the execution of a contract to sell, purchase, lease, etc. Although most of the cases so holding have involved real estate brokers, the principle is not part of a body of law peculiar to real estate brokers. Instead, as the cases make clear, it is a rule of contract interpretation applicable to agents generally.

Apparently the first case in this Court dealing with the issue was *Keener v. Harrod,* 2 Md. 63, 71, 56 Am.Dec. 706 (1852), where an "agent" was employed to procure a "purchaser" of a lot in Baltimore City.[3] The Court held that the agent was entitled to his commission only upon a consummated sale, stating: "The legal import of an agreement to procure a purchaser, binds the party to name a person who ultimately buys the property." The Court in *Keener* relied on the English case of *Wilkinson v. Martin,*

---

**3.** The opinion in *Keener* does not indicate whether the "agent" was a real estate broker, auctioneer, attorney, or other type of agent. At the time of that case, apparently real estate brokers did not constitute a separately licensed occupation in Maryland. The first statute providing for the licensing of real estate brokers seems to have been Ch. 448 of the Acts of 1868.

34 Eng. C.L. 267, 8 Carr. & Payne 1 (1837), involving a ship-broker. It also relied upon J. Russell, *A Treatise On The Laws Relating To Factors And Brokers,* 159-160 (1845), which discussed the principle in the context of agents generally.

In *Kimberly v. Henderson and Lupton,* 29 Md. 512 (1868), two brokers were employed under an agreement providing that they would receive their commission if they "succeeded in negotiating a sale." 29 Md. at 512. The brokers found a "purchaser" who entered into a written contract of sale with the vendor, but the purchaser failed to consummate the sale and the deposit was forfeited. Interpreting the agreement so as to deny a commission to the brokers because the sale was not consummated, Judge Alvey stated for the Court (*id.* at 515):

> "The undertaking to procure a purchaser requires of the party so undertaking, not simply to name or introduce a person who may be willing to make any sort of contract in reference to the property, but to produce a party capable, and who ultimately becomes the purchaser. These propositions are settled by the cases of *Keener vs. Harrod & Brooke,* 2 *Md.Rep.,* 63; *McGavock vs. Woodlief,* 20 *How.,* 221."

In *Riggs v. Turnbull,* 105 Md. 135, 66 A. 13 (1907), a property owner agreed that he would pay the usual commission if the broker "sold the house." The broker brought a prospective purchaser to the owner; a written contract to sell the house was entered, and a deposit was made. The buyer was thereafter unable to carry out the contract, and the owner accepted a forfeiture of the deposit. Like the auctioneer Billig and the Court of Special Appeals in the instant case, the broker in *Riggs* relied on cases in other states holding that a "sale" takes place and the commission is earned when the contract of sale is executed. 105 Md. at 141-144. While recognizing that this is the interpretation of such employment contracts in many other jurisdictions, the Court in *Riggs* stated: "But this is not the rule prevailing . . .

in this State." *Id.* at 148. After reviewing several Maryland cases, the Court reaffirmed that the entitlement to a commission "depends absolutely upon the carrying of the contract into execution." *Id.* at 150. The Court in *Riggs* further held that the broker was not entitled to a percentage of the forfeit, saying *(ibid.):* "The Commissions are recoverable for a sale made and executed, not for the receipt of a forfeit provided to indemnify the vendor for non performance by the vendee."

Many years later, in *Wyand v. Patterson Agency, supra,* 271 Md. at 622, after reviewing the above-discussed cases and others, this Court reiterated that it was "settled . . . in this State that the word 'sold' or similar language in a commission agreement with a real estate broker would be construed to mean a consummated sale and not a contract to sell." The Court went on to refer to this principle as a "rule of construction" still applicable in situations not governed by statute. *Id.* at 622-623, 625. More recently, in *DeFranceaux Realty Group v. Leeth,* 283 Md. 611, 617, 391 A.2d 1209 (1978), Judge Cole pointed out for the Court: "We have consistently held that when the term 'sale' is used in a contract of this type, it refers to a completed settlement." *See also, e.g., Carrington v. Graves,* 121 Md. 567, 572-573, 89 A. 237 (1913); *Melvin v. Aldridge,* 81 Md. 650, 658, 32 A. 389 (1895); *Jones v. Adler,* 34 Md. 440, 443 (1871); *Schwartze v. Yearly,* 31 Md. 270, 277 (1869); *Richards v. Jackson,* 31 Md. 250, 1 A.L.R. 49 (1869); *Beale v. Creswell,* 3 Md. 196, 201 (1852).

As previously indicated, both the auctioneer Billig and the Court of Special Appeals relied upon cases in other states holding that, under a contract like the one now before us entitling the auctioneer to a commission if the property is "sold," a consummated sale is not necessary. Specifically, reliance was placed on cases applying the law of Georgia,[4] Missouri,[5] and Virginia.[6] Regardless of whether the cited

---

4. Rountree v. Todd, 210 Ga. 226, 78 S.E.2d 499 (1953); Roberts v. Todd, 120 Ga.App. 444, 170 S.E.2d 862 (1969).

5. Shopen v. Bone, 328 F.2d 655 (8th Cir. 1964), applying Missouri law.

6. Linkous v. Harris, 134 Va. 63, 113 S.E. 831 (1922).

cases are distinguishable, it is noteworthy that all three of those states apply the same rule to real estate brokers, holding that, under similar language in the employment contract, a consummated sale is not required for the real estate broker to have earned his commission.[7] Thus, the jurisdictions relied on by Billig and the Court of Special Appeals are ones rejecting the Maryland rule of construction, whether in the context of auctioneers' or real estate brokers' employment contracts. We are aware of no case drawing the distinction which the Court of Special Appeals made here, namely that under the same language in the employment contract, and in the absence of statute, a real estate broker is entitled to his commission only upon a consummated sale but an auctioneer is entitled to his commission where the purchaser failed to complete the sale. Moreover, no reason for interpreting the identical contractual language differently, depending upon whether the agent is an auctioneer or a real estate broker, has been suggested to us.[8]

In the case at bar, the critical language of the employment contract entitled Billig to a commission if the property "is sold"; the owners agreed to pay the commission "on the amount for which the property is sold." Under the settled

---

**7.** Payne v. Ponder, 139 Ga. 283, 77 S.E. 32 (1913); Tant v. Gee, 348 Mo. 633, 154 S.W.2d 745, 747 (1941); Adelman v. Caputi, 212 Va. 94, 181 S.E.2d 608 (1971).

**8.** The dissent suggests that a difference between an auctioneer's sale and a sale by a real estate broker is that "[a]t a public auction the sale is completed when the auctioneer announces it by the fall of his hammer," and the dissent cites Maryland Code (1975), § 2-328 (2) of the Commercial Law Article, as well as some cases from other jurisdictions. The statutory section cited, however, concerns only the sale of goods. The theory behind the cases relied on by the dissent is that the fall of the auctioneer's hammer is merely the acceptance of a bid forming an oral executory contract, thus precluding withdrawal of the bid. None of the cases cited by the dissent suggest that a sale of real estate is consummated upon the fall of the auctioneer's hammer. It is well settled that in a sale of real estate, legal title does not pass until a deed is properly executed and delivered. Kingsley v. Makay, 253 Md. 24, 251 A.2d 585 (1969). See Code (1974, 1981 Repl. Vol.), § 3-101 (a) of the Real Property Article. The Supreme Judicial Court of Massachusetts has expressly recognized that an auction sale of *real estate* is not consummated until the delivery of a deed to the purchaser. Schanberg v. Automobile Ins. Co. of Hartford Conn., 285 Mass. 316, 189 N.E. 105, 106 (1934).

Maryland rule of contract interpretation, such language refers to a consummated sale; the agent is not entitled to his commission where, as here, the purchaser fails to carry out the contract of sale. The employment contract contained no express language applicable to the facts of this case which would change this result.[9] Consequently, Billig was not entitled to retain a full commission from the deposit.[10]

> *Judgment of the Court of Special Appeals reversed, and case remanded to that Court with directions to reverse the judgment of the Superior Court of Baltimore City (now the Circuit Court for Baltimore City) and remand the case to that Court for further proceedings not inconsistent with this opinion.*
> *Respondent to pay costs.*

*Cole, J., dissenting:*

I agree with the majority that § 14-105 of the Real Property Article does not apply to auctioneers. I disagree, however, that, under the circumstances of this case, an auctioneer is an agent who is not entitled to a commission when the purchaser fails to carry out the contract of sale. I, therefore, respectfully dissent.

An auctioneer is an agent who is authorized to sell goods or real estate at a public sale. *City of Chicago v. Ornstein,*

---

**9.** The employment contract did contain language which would require a different result under other circumstances. It stated that if the owners withdrew the property from sale, a commission based on a percentage of $246,000.00 would be paid.

**10.** The employment contract also provided that if the property was not sold "because of inadequacy of bid or bids, owners shall pay to the Auctioneers . . . a fee of $750.00, plus such advertising costs." In their brief in this Court, the petitioners expressly conceded that under this language, Billig is entitled to a $750.00 fee plus advertising costs. In light of this concession, we need not consider the meaning of this clause or whether it is applicable to the circumstances of this case. Upon remand, the trial court should give effect to the concession.

323 Ill. 258, 154 N.E. 100 (1926). When an auctioneer's authority is based upon an express contract the terms of the contract govern. *Wilcher v. Mcquire,* 537 S.W.2d 844 (Mo. App. 1976). The seller may set the manner and terms of the auction and the auctioneer is required to adhere to such terms in good faith and in the interest of the vendor. F. Tiffany, *Handbook of the Law of Principal and Agency,* 77 (R. Powell, 2nd edition 1924); *Becker v. Crabb,* 223 Ky. 549, 4 S.W.2d 370, 371 (1928).

Although the employment agreement may specifically provide that an auctioneer's duties are to extend beyond the sale and to the settlement, when there is an exclusive contract which confines the duties of the auctioneer to a certain time period and within such period those duties are discharged, the auctioneer is entitled to his commission.[1] At a public auction the sale is completed when the auctioneer announces it by the fall of his hammer or another customary manner.[2]

---

1. It is clear that the seller in this case did not intend to condition Billig's commission upon the purchaser's full compliance with the terms of the sale contract because Billig's contract expired 30 days after its execution while the purchaser had 60 days after the auction to consummate the sale.

2. As to personalty, *see* Maryland Code (1975), § 2-328 (2) of the Commercial Law Article, Feaster Trucking Service, Inc. v. Parks-Davis Auctioneers, Inc., 211 Kan. 78, 505 P.2d 612 (1973); Employers Liability Assur. Corporation v. Sweatt, 95 N.H. 31, 57 A.2d 157 (1948); Lott v. Delmar, 2 N.J. 229, 66 A.2d 25 (1949). As to realty *see* Blossom v. Railroad Company, 70 U.S. (3 Wall.) 196, 18 L.Ed. 43 (1865) (as soon as the hammer is struck down the bargain is considered as concluded); Tillman v. Dunman, 114 Ga. 406, 40 S.E. 244 (1901) (bidder at judicial sale of property has no right to compel conveyance until property has been knocked off to him); State v. Kahua Ranch Ltd., 47 Hawaii 28 384 P.2d 581 (1963) (contract between parties for the sale of public lands made upon the fall of the hammer at auction); Forbes v. Wells Beach Casino, 307 A.2d 210 (Me. 1973) (principles of Uniform Commercial Code relating to auctioning of goods apply to real property); Anderson v. Wisconsin Cent. Ry. Co., 107 Minn. 296, 120 N.W. 39 (1909) (bid at auction for building not binding until hammer falls); Lyche v. Steele County, 72 N.D. 238, 6 N.W.2d 92 (1942) (rules governing sale of property acquired by county through tax deed are analogous to rules governing auctions — contract becomes complete when bid is accepted); Freeman v. Poole, 37 R.I. 489, 93 A. 786 (1915) (same rules apply in the auctioning of real or personal property); Matthews v. Linn, 78 S.D. 203, 99 N.W.2d 885 (1959) (when auctioneer accepts bid the auction is complete).

As I see it, in the instant case, the contract between the auctioneer and the owner of the property is clear and unambiguous. Billig was given an exclusive employment contract for 30 days within which it was to sell the owner's property and receive a 5 percent commission. If the owner or another agency had sold the property during this 30 day period, Billig would have been entitled to a commission of 5% of the sale price. If the owners had withdrawn the property from sale at the auction Billig would have been entitled to a commission on $246,000 plus advertising costs. Only if no sale occurred because of inadequate bids would Billig be entitled to less than its full commission, *i.e.,* the nominal fee of $750.00 plus advertising costs.

I find no ground to read into the contract a condition limiting the auctioneer's entitlement to a commission based on whether or not the purchaser consummated the sale, as that term is interpreted in cases dealing with real estate brokers. The contract did not condition Billig's commission on the transfer of title and it seems clear that when the parties used the word "sell" they were using it in the context of auctioneering, *i.e.,* that the auctioneer would conduct the auction so as to effect a contract to sell when the bidding was concluded. The owners could have provided otherwise, *i.e.,* that payment of the commission would come from the total proceeds of sale or that the full commission would be contingent on the transfer of title. They did not do so. And, as we stated in *DeFranceaux Realty Group v. Leeth,* 283 Md. 611, 618, 391 A.2d 1209 (1978), "Absent [a showing of fraud or duress] we [should] not rewrite a contract now to suit parties which would have been more favorable to their interests."

Accordingly, Billig is entitled to its commission under the terms of the contract and the judgment of the Court of Special Appeals should be affirmed.