732 A.2d 1012

**EXPRESS AUCTION SERVICES, INC.**

v.

**Joseph D. CONLEY, Jr., et ux.**

**No. 1806, Sept. Term, 1998.**

Court of Special Appeals of Maryland.

July 8, 1999.

448

Behrooz Garavi (Boring & Pilger, P.C., on the brief), Vienna, VA, for Appellant.

No brief or appearance by Appellees.

Submitted before WENNER, EYLER and SONNER, JJ.

EYLER, Judge.

On April 9, 1998, Express Auction Services, Inc., appellant, filed a complaint against Joseph D. Conley, Jr. and Deborah Conley, appellees, seeking compensation for the provision of

auctioneering services.[1] Appellant sued for breach of contract and in quantum meruit. Appellees filed a motion for summary judgment on the ground that appellant was not entitled to compensation as a matter of law because it provided real estate brokerage services but was not a real estate broker. Both parties requested a hearing on that motion, but the circuit court granted it without a hearing. Appellant filed a motion to alter or amend judgment, which was denied also without a hearing. We hold that appellant is not entitled to compensation on the facts of this case.

The following facts are apparently not in dispute. The parties entered into a real estate auctioneering services contract, pursuant to which appellant was to conduct a public auction for the sale of real estate owned by appellees. The contract provided that appellees would pay appellant a commission for the sale of the property. It further provided that appellees agreed to pay appellant the commission "whether the sale takes place at auction, or in case a contract is received by owner(s) auctioneers or broker, within sixty (60) days of the sale date."

Pursuant to the contract, appellant engaged in extensive advertising and administrative efforts to organize a public auction and conducted a public auction on February 20, 1998. At that time, appellees accepted a bid submitted by the high bidder at the public auction, which allowed appellees a limited amount of time in which to accept higher offers made after the public auction and an opportunity for the high bidder to match any subsequent higher offers. On the day of the auction, appellant was contacted by a real estate agent representing a party who ultimately purchased appellees' real estate. Appellant requested that the agent contact the appellees' agent. On February 21, 1998, appellees signed a contract for the sale of the property without notifying appellant.

---

1. The complaint was originally filed in the Circuit Court for Montgomery County and later transferred to the Circuit Court for Baltimore City.

Appellant presents two questions on appeal, which we have rephrased:

1. Did the trial court err in granting summary judgment without a hearing?

2. Did the trial court err in granting summary judgment based on its construction of Md.Code (1995 Repl.Vol.), Business Occupations and Professions (BOP) § 17–102(4)?

## Discussion

### 1.

The circuit court erred in granting summary judgment without holding a hearing. *See* Md. Rule 2–311(f). The only substantive issue before this Court on appeal, however, is a narrow issue of law relating to the scope of Md.Code (1995 Repl.Vol.), BOP § 17–102(4). Consequently, we see no practical purpose to be served in remanding the case for a hearing without deciding that issue. *See Briscoe v. Mayor & City Council of Baltimore,* 100 Md.App. 124, 128, 640 A.2d 226 (1994).

### 2.

BOP § 17–516 (1995 Repl.Vol.) provides:

A person may not bring an action or recover on an action for compensation for providing real estate brokerage services in a court of the State unless the person was authorized to provide real estate brokerage services under [Title 17] at the time of offering to provide and providing real estate brokerage services.

The term "Provide real estate brokerage services" is defined in § 17–101 to include the following activities:

(1) for consideration, providing any of the following services for another person:

(i) selling, buying, exchanging, or leasing any real estate;

. . .

(2) for consideration, assisting another person to locate or obtain for purchase or lease any residential real estate;

(3) engaging regularly in a business of dealing in real estate or leases or options on real estate;

(4) engaging in a business the primary purpose of which is promoting the sale of real estate through a listing in a publication issued primarily for the promotion of real estate sales;

. . .

(6) for consideration, serving as a consultant regarding any activity set forth in items (1) through (5) of this subsection.

Md.Code (1998 Supp.), BOP § 17–101(k).

 Appellant was an auctioneer and does not argue on appeal that its agents were authorized as real estate brokers, associates, or salespeople to provide real estate brokerage services to the appellees. Appellant also does not claim that it is due a commission for merely producing a high bidder at its auction. Appellant's claim for commission is based instead on the completed sale to the ultimate buyer of the property and the contractual provision calling for payment of a commission in case a contract is received "within 60 days of the sale date."[2] There is no dispute that appellant provided real estate brokerage services to the appellees as that term is defined in § 17–101(k). Appellant's action for compensation is therefore prohibited unless it falls within an exception.

---

2. While there is a provision in the contract that provides for a fee payable to appellant if the property is withdrawn prior to the auction, we express no opinion as to the legality of this provision or as to the legality of any other alternative provisions relating to fees not presented in this case. No fee is due under the contract if a bid is rejected on the sale date. The contract therefore envisions no compensation based solely upon appellant's efforts to produce a high bidder. In any event, a commission that is contingent upon a sale of real property at auction is payable only after title is transferred, unless the parties specify a contrary result. *See Childs v. Ragonese*, 296 Md. 130, 139–40, 460 A.2d 1031 (1983).

■ An exception is created by BOP § 17–102(4), which provides that Title 17 does not apply to "a licensed auctioneer while selling any real estate at public auction." The legal dispute in this case turns on the meaning of that language.

Appellant argues in its brief that a narrow reading of § 17–102(4) would exempt auctioneers from the statutory scheme of Title 17 "only and precisely during the specific moments real estate is offered at a live public auction." Appellant asserts that such a reading would prevent auctioneers from engaging in the extensive advertising, marketing, consulting, and logistical preparations necessary to produce an effective auction, and would, in effect, end public auctions of real estate in Maryland. Based on these assertions, appellant states that the Legislature must have intended to create a broad exclusion for auctioneers from the regulation and licensing scheme of Title 17. Such an exclusion necessarily would encompass the normal activities involved in conducting real estate auctions, and would include access to the courts of this State in order to protect the legal interests arising from auctioneering activities. Appellant concludes that the above 60–day contract clause is a reasonable tool that it used to protect itself from unscrupulous buyers and sellers who might "free ride" on the efforts of the auctioneer and avoid paying a commission.

We agree with appellant that the term "while selling" in § 17–102(4) does not exclusively pertain to the relatively short time period during which an actual public auction is conducted. It must include those acts prior to and necessary for the consummation of a sale after the bidding process. The exemption of auctioneers from the reach of modern real estate statutes was first enacted by Laws of Maryland (1939), chapter 351 § 285. That statute added a new body of law relating to the licensing and regulation of real estate professionals, and exempted from the definitions of those professionals "any duly licensed auctioneer *with respect to* the sale of real estate at public auction." 1939 Md. Laws 351 § 285 (emphasis added). This language remained in effect until changed to the present language by Laws of Maryland (1988), chapter 563 § 2. The 1988 change in language did not occur in the formal code

revision process, but in an exhaustive substantive review conducted by the Joint Subcommittee on the Business Occupations Article. *See* Md.Code (Supp.1988), Art. 56A, Title 4 general Subcommittee comment. In its "subcommittee comment" explaining the change from the original language to the present language, the Subcommittee expressly stated that no substantive change was intended. *See* Md.Code (Supp.1988), Art. 56A § 4–102 Subcommittee comment. The term "while selling any real estate at public auction," is therefore identical in meaning to the previous term "with respect to the sale of real estate at public auction."

It is also apparent from the Subcommittee comment that the statute excludes "enumerated activities" from the real estate brokers Title, not persons of a particular status. *Id.* § 4–102 Subcommittee comment. Appellant is not exempted from the Title because it is an auctioneer, but only when, as a licensed auctioneer, it is acting with respect to the sale of real estate at public auction.

We therefore turn to a brief discussion of what constitutes a public auction and what activities are traditionally associated with auctioneering. In *Pyles v. Goller*, 109 Md.App. 71, 75 n. 2, 674 A.2d 35 (1996), we reprinted several definitions from a glossary by the National Auctioneers Association, and we shall borrow again a pertinent few of those terms:

**Auction**

A method of selling real estate in a public forum through open and competitive bidding. Also referred to as: public auction, auction sale or sale.

**Absolute Auction**

An auction where the property is sold to the highest qualified bidder with no limiting conditions or amount. The seller may not bid personally or through an agent. Also known as an auction without reserve.

**Auction With Reserve**

An auction in which the seller or his agent reserves the right to accept or decline any and all bids. A minimum acceptable price may or may not be disclosed and the seller

reserves the right to accept or deny any bid within a specified time.

National Auctioneers Association, *Glossary of Real Estate Auction Terms* 2–3. Additionally, *The Official Government Auction Guide* defines "Auction" as "A public sale to the highest bidder; the sale of real property or goods by public outcry and competitive bidding." George Chelekis, *The Official Government Auction Guide* 487 (2d ed.1992).

In *Pyles,* we noted that there are generally two methods of selling property at an auction, "with reserve," and "without reserve," and we said there is a presumption in contract law that an auction is held with reserve unless otherwise specified. *Pyles,* 109 Md.App. at 81, 674 A.2d 35 (citing 1 Arthur L. Corbin, *Corbin on Contracts* § 4.14 (Rev. ed.1993); 7 Am. Jur.2d *Auctions and Auctioneers* § 17 (1980); Md.Code (1992 Repl.Vol.), Com. Law I § 2–328(3)). *See also* Restatement (Second) of Contracts § 28 (1981). We also stated that in an auction without reserve, the opening of bids by the auctioneer constitutes an offer that is accepted by the highest bidder. *Pyles,* 109 Md.App. at 82, 674 A.2d 35. We stated that in an auction with reserve, however, the opening of bids is merely an invitation to make a contract. *Id.* at 81–82, 674 A.2d 35. In an auction with reserve, therefore, each bid is an offer subject to acceptance or rejection by the seller. *See* Restatement (Second) of Contracts § 28(1)(a). According to the National Auctioneers Association definition of an auction with reserve, a seller's acceptance or rejection may occur "within a specified time" after the auction.

■ It is also apparent from the above definitions that a public auction at which one or more bids are actually made, produces, at a minimum, an *offer* to purchase the specified property. The contract between the parties in this case expressly called for an auction with reserve. Under the contract, the property would be sold to the highest bidder "provided the price offered [was] satisfactory to" the appellees. The purpose of the auction was to produce offers that could be accepted or rejected at a later time by the appellees.

We conclude from the above discussion that appellees' property was not sold at appellant's auction, but outside of the auction. Appellant does not allege that the ultimate purchaser of the property participated in the public auction. In referring the agent for the ultimate purchaser directly to the appellees' agent, appellant was not acting with respect to the sale of real estate at public auction, but was acting pursuant to the contract provision purportedly allowing it to recover a commission for any sale of the property "within sixty (60) days of the sale date." [3] The contract itself distinguishes between a sale within 60 days of the auction and a sale that "takes place at auction," and the contract provides for a commission in either event. The parties may have an agreement calling for the payment of a commission on the facts of this case, but BOP § 17–516 prohibits appellant from enforcing the agreement.

Compensation under a quantum meruit theory, based on the completed sale of appellees' property, is barred by § 17–516 for the same reasons that compensation is barred under the contract. *Cf. Higgins v. Scherr,* 655 F.Supp. 368, 370 (1987), *rev'd on other grounds,* 837 F.2d 155 (1988).

**JUDGMENT AFFIRMED; COSTS TO BE PAID BY APPELLANT.**

---

**3.** To the extent that the ultimate purchaser can be seen as participating in a successive bidding scheme that extended beyond the public auction, such a scheme can not be the basis for an auctioneering commission as to any offer not made during the public auction.